UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DANIELLE McCALL, Individually and | ) | Civil Action |
| on behalf of her minor children, | ) | Case No. 2011-0642 |
| S. R. E. and S. R. E. | ) | |
| Plaintiff | ) | Section "F" |
| | ) | Judge Feldman |
| versus | ) | |
| | ) | Magistrate Section "4" |
| PAUL VALLAS, Superintendent | ) | Magistrate Judge Roby |
| of the Recovery School District in his | ) | |
| official capacity; LOUISIANA BOARD | ) | |
| OF ELEMENTARY AND | ) | |
| SECONDARY EDUCATION, et | ) | |
| al., in its official capacity; EDWIN | ) | |
| COMPASS, Director of Recovery | ) | |
| School District Safety and Security | ) | |
| in his official capacity; CHERYL | ) | |
| JOHNSON, Teacher at Sarah T. | ) | |
| Reed Elementary School in her | ) | |
| individual and official capacities; | ) | |
| and DAPHYNE BURNETT, | ) | |
| Principal of Sarah T. Reed | ) | |
| Elementary School in her | ) | |
| individual and official capacities | ) | |
| Defendants | ) | |

## AMENDED COMPLAINT

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Danielle McCall, Individually, and on behalf of her minor children, S. R. E. and S. R. E., who for her Amended Complaint respectfully avers:

**Introduction**

1.

This is a civil rights action filed pursuant to 42 U.S.C. § 1983 and a personal injury action filed pursuant to La. Civil Code arts. 2315 and 2315.6 to vindicate the rights of minor children that were violated while attending the Sarah T. Reed Elementary School ("Reed Elementary"), a school operated by the Recovery School District ("RSD").

**The Parties**

2.

Plaintiff, Danielle McCall, is a person of the full age of majority and resident of the Parish of Orleans, State of Louisiana.  She is the mother of the two minor children herein, S. R. E. and S. R. E.

3.

Plaintiff, S. R. E. ("Child No. 1"), is a ten-year old resident of the Parish of Orleans, State of Louisiana.  He is currently enrolled at H.C. Schaumburg Elementary School and he attended Reed Elementary during the 2009-2010 school year.  He brings this action by and through his mother, Danielle McCall.  At the time of the incidents alleged in this complaint, Child No. 1 was a third grade student at Reed Elementary.

4.

Plaintiff, S. R. E. ("Child No. 2"), is a nine-year old resident of the Parish of Orleans, State of Louisiana.  He is currently enrolled at H.C. Schaumburg Elementary School and he attended Reed Elementary during the 2009-2010 school year.  He brings this action by and through his mother, Danielle McCall.  At the time of the incidents alleged in this complaint, Child No. 2 was a second grade student at Reed Elementary.

5.

Named Defendant is Paul Vallas, the Superintendent and Chief Executive Officer of the Louisiana Recovery School District, a state school district administered by the Louisiana Department of Education.   Defendant Vallas is responsible for implementing the policies, programs, and laws affecting RSD-operated public schools.   Defendant Vallas is sued in his official capacity only.

6.

Named Defendant is Louisiana Board of Elementary and Secondary Education ("BESE"), who is responsible for the oversight of the Louisiana Department of Education and the Louisiana Recovery School District.   BESE oversight responsibilities include the approval and adoption of rules, by-laws, and regulations for the discipline of students and for the government of the public elementary and secondary schools and other public schools and programs under its jurisdiction, which shall not be inconsistent with law, pursuant to La. R.S. § 17:7.   Pursuant to La. R.S. § 17:10.5, BESE functions as the local school board for the RSD, promulgating and enforcing local policy and supervising the Superintendent.   Pursuant to La. R.S. § 17:6, BESE has the authority to sue and be sued.   Defendant BESE is sued here in its official capacity only.

7.

Named Defendant is Edwin Compass, the Executive Director of the RSD Department of Safety and Security ("Security Department").   Defendant Compass has supervisory authority over all RSD police officers and develops district-wide education training programs, policies and procedures.   The RSD Operations Manual refers to employees of RSD's Security Department as "law enforcement officers."   The Security Department's website refers to these individuals as

"police."  The RSD code of conduct refers to them as "public safety officers."  Pursuant to La. R.S. § 40:2401, these individuals perform the duties of peace officers which include making arrests and performing searches and seizures.  Defendant Compass is sued here in his official capacity only.

8.

Named Defendant is Cheryl Johnson, a former employee of the RSD and a former school teacher at Reed Elementary.  Defendant Johnson had administrative and supervisory responsibility over personnel, administration, affairs, and students at Reed Elementary. Defendant Johnson is sued here in her official and individual capacities.

9.

Named Defendant is Daphyne Burnett, an employee of the RSD and the school principal at Reed Elementary.  Defendant Burnett has administrative and supervisory responsibility over all personnel, administration, and affairs at Reed Elementary.  Defendant Burnett is sued here in her official and individual capacities.

**Jurisdiction & Venue**

10.

This cause of action arises under the First, Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 and La. Civil Code arts. 2315 and 2315.6. Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 1331 and 1343.  This Court has jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' state law claims, because they are so related to the federal claims in this action that they form a part of the same case or controversy under the Constitution and laws of the United States.

11.

Venue is appropriate pursuant to 28 U.S.C. § 1391(b)(2).

**Statement of Facts**

**As to Child No. 1**

12.

Child No. 1 is a handicapped child who suffers from Duchenne muscular dystrophy ("DMD"). This rare form of muscular dystrophy causes rapidly-worsening muscle wasting throughout the body, which eventually leads to skeletal deformities, paralysis, and a host of other symptoms that affect the heart and breathing. The expected life-expectancy of a child with DMD is approximately twenty-five to thirty years old. The genetic disorder typically begins in the legs and pelvic area before spreading to other extremities including the arms and neck. Mental retardation may occur in children that suffer from DMD, but Child No.1 is not believed to suffer from mental retardation. Child No. 1, however, is developmentally impaired and has learning disorders, which is typical of children suffering from DMD. Child No. 1 was approximately nine years old and had been diagnosed with DMD approximately one year prior to being attacked.

13.

Child No. 1 was unable to stand or walk under his own power at the time of the incident; in fact, he was bound to a wheelchair and required physical assistance at school. An RSD employee was assigned to meet Child No. 1 at the end of each class to help him move from class to class throughout each school day.

**Allegations as To Child No. 1**

14.

On or about April 8, 2010, Child No. 1 was a student in his third grade mathematics class taught by Defendant Johnson.  After performing his teacher's instructions, Child No. 1 began writing a note to a classmate.  Defendant Johnson, suddenly and without any warning, approached the child from behind, pulled the hood of Child No. 1's jacket over his head, and violently threw him out of his desk to the ground.  Defendant Johnson continued to forcibly hold the hood of Child No. 1's jacket over his face while she dragged him across the classroom floor, before she resumed teaching the rest of the students in class.  Defendant Johnson left Child No. 1 on the floor of the classroom, helpless and unable to stand (because of his severe physical disability), for the remainder of the class.

15.

Danielle McCall, the child's mother, immediately went to the school.  Her son was traumatized and could not express what happened to him.  Children in the class at the time of the attack recounted what happened.  Defendant Principal Burnett assured Ms. McCall that Defendant Johnson was being sent home because of this incident and because Defendant Johnson had abused other children as well.

16.

Before Child No. 1 attended Reed Elementary, he was an enthusiastic learner who looked forward to attending school each day.  Now, as a result of the physical and verbal abuse he suffered at Reed Elementary, Child No. 1 suffers from severe emotional distress, mental disorders and fears attending school.

17.

At the time of this incident Defendant Johnson was employed by Defendant, BESE. Upon information and belief, Defendant Johnson had a longstanding personality disorder and a history of violent activity while employed by BESE.  BESE knew of Defendant Johnson's personality disorder and propensity for violence at the time of her hiring and during the entire time of her employment.  Upon information and belief, Defendant Johnson has been terminated for her actions.

18.

A proximate cause of the damage complained of herein consists of the following non-exclusive acts of fault and negligence as to Defendants, Johnson and BESE:

A.     Injuring Children Nos. 1 and 2;

B.     Hiring Mrs. Johnson even though she had a known history of violence;

C.     Retaining Mrs. Johnson even though she had a known history of violence;

D.     Improper training and supervision of Mrs. Johnson;

E.     Failing to do what they should have done to have stopped and/or prevented the incident;

F.     Failing to warn others, including Plaintiffs, of Mrs. Johnson's personality disorder and known violent propensities; and

G.     Any and all other acts of fault and/or negligence that will be proven prior to and at the time of the trial of this matter.

19.

As a result of said fault and negligence, Plaintiff, Child No. 1, through his mother, Danielle McCall, brings an action for damages that includes, but is not limited to: pain and suffering, past, present and future; mental suffering, past, present and future; permanent

disability; past, present and future; medical expenses, past, present and future; and loss of enjoyment of life.

20.

As a result of said fault and negligence, Danielle McCall, brings an action for damages as a result of her arrival at Reed Elementary immediately after the events herein occurred and her resultant emotional distress and mental anguish that she was caused to suffer.

21.

BESE is further liable under the doctrine of *respondeat superior* for the fault and negligent acts of Defendant Johnson, made during the course and scope of her employment by BESE.

22.

BESE is also liable under the doctrine of *respondeat superior* for the negligent hiring of a Defendant Johnson.  BESE failed to exercise reasonable care in hiring an employee who, in the performance of her duties as a teacher, will not subject students to a serious risk of harm.  Upon information and belief, BESE knew of Defendant Johnson's personality disorder and propensity for violence at the time of her hiring and during the entire time of her employment.  BESE, however, failed to inform parents, students, and/or supervise Defendant Johnson.

23.

BESE is vicariously liable under the doctrine of respondeat superior because Defendant Johnson's intentional tort was committed during the school day, in a classroom during class, and stemmed from Defendant Johnson's duties as a teacher.  For these reasons, the tort was within the scope of Defendant Johnson's employment and the employer is liable to Child No. 1 and his mother Denise McCall.

**Statement of Facts**

**As to Child No. 2**

24.

Child No. 2 is a handicapped child who also suffers from Duchenne muscular dystrophy ("DMD") like his brother, Child No. 1.  This rare form of muscular dystrophy causes rapidly-worsening muscle wasting throughout the body, which eventually leads to skeletal deformities, paralysis, and a host of other symptoms that affect the heart and breathing.  The expected life-expectancy of a child with DMD is approximately twenty-five to thirty years old.  The genetic disorder typically begins in the legs and pelvic area before spreading to other extremities including the arms and neck.  Mental retardation may occur in children that suffer from DMD.  Child No. 2 is developmentally, emotionally, and learning impaired.  Child No. 2 was approximately nine years old and had been diagnosed with DMD approximately one year prior to the civil rights violations.  At the time of the violations, Child No. 2 was not wheel-chair bound like his brother.  Child No. 2 could walk with the help of leg braces.

25.

Child No. 2 is a developmentally disabled child who suffers from muscular dystrophy.  At all material times herein, Child No. 2 attended Reed Elementary.  Throughout the 2009-2010 and 2010-2011 school year, Child No. 2 has been subjected to disciplinary actions at Reed Elementary.  During these disciplinary actions, however, school officials used excessive force and discipline, including unlawful arrests and seizures without reasonable suspicion or probable cause and not reasonably related to a legitimate objective.  In light of Child No. 2's age, physical, emotional, and mental limitations, and nature of the alleged infractions, these arrests and/or seizures are excessively intrusive.

26.

Defendants acted beyond the scope of their discretionary authority and subjected Child No. 2 to an unlawful arrest and seizure policy that left him shackled on more than one occasion. Defendants initiated these arrests and seizures to punish, humiliate, and intimidate Child No. 2 and other students who violated very minor school rules.  Upon information and belief, the Defendants unlawful seizure and arrest policy remains in effect at Reed Elementary.

27.

Defendants Vallas, BESE, and Compass acted and continue to act with indifference to the rights of Child No. 2 and other students at Reed Elementary by failing to train, supervise and monitor the actions of school officials.  As a result, Reed Elementary School officials enacted and continue to enforce an unlawful school-wide policy that requires the unreasonable and excessively intrusive seizure and arrest of students who are alleged to have violated minor school rules.  This policy is exemplified by the abuses inflicted upon Child No. 2 who has been subjected to these actions on multiple occasions.

28.

Child No. 2 was taunted and teased by older children and peace officers that were assigned to Reed Elementary on a daily basis because of his disabilities.  Child No. 2 became very self-conscious and sensitive to people mocking his deteriorating physical condition, namely, his inability to walk upright without the use of leg braces.  The school provided no relief or support to Child No. 2 to prevent the torment he received on a daily basis.  Feeling helpless and alone at school, on top of his emotional and developmental infirmities, Child No. 2 increasingly resorted to yelling, cursing, and occasionally fighting other kids, many of them older than

himself, to prevent the taunting and teasing that school officials blatantly failed to stop, and in some instances, actually encouraged and participated in.

29.

In one such instance in March of 2010, Child No. 2 got into an argument at school with an older, non-disabled child that was mocking the way Child No. 2 ran due to his physical disabilities and his leg braces.  Defendant Doe, a peace officer assigned to the school, witnessed the verbal argument and teasing, but refused to intervene.  Defendant Doe stood and watched the altercation along with other children in the vicinity until the children began shoving each other. With the argument escalating from a verbal argument to a physical argument, Defendant Doe forcibly seized Child No. 2, but at this point, the child was crying, humiliated, and inconsolable.

30.

Defendant Doe brought Child No. 2 to Defendant Principal Burnett's office by forcibly manhandling the physically disabled nine-year old boy as he cried and struggled to maintain his balance due to the officer's use of force.  On the way, Defendant Doe repeatedly told Child No. 2 he was "stupid" and "retarded."

31.

Inside Defendant Burnett's office, Defendant Burnett ordered Defendant Doe to forcibly shackle Child No. 2 to a chair with chains and handcuff his wrists.  Defendants Burnett and Officer Doe's reprehensible actions were perpetrated maliciously, willfully, and with the intent to cause Child No. 2 further harm, humiliation, and intimidation.  In short, Defendants Burnett and Officer Doe intentionally shackled a disabled, nine year old boy to punish him for his part as a non-aggressor in a school yard shoving match.

11

32.

Defendants' sadistic actions deeply traumatized, humiliated, and reinforced Child No. 2's feelings of worthlessness and helplessness over his situation.  Child No. 2 was upset and inconsolable with being chained, shackled, and arrested after he was being taunted by an older child.  He asked repeatedly to speak to his mother, but was ignored by school officials.  He remained chained to the chair throughout his arrest and seizure.

33.

Defendants Burnett and Officer Doe left Child No. 2 in a secluded room for an extended period of time, which was long enough for the chains and handcuffs to bruise the child's arms and wrists.  At some point, a school official entered the secluded room, unchained the boy, and led him to the in-school suspension room.  Once inside, the boy was taunted and teased by older children already in the suspension room.

34.

The school never called his mother, sent her a letter, or informed her of this event or any other event where chains and restraints were used.  Child No. 2's mother had no clue that restraints were regularly used on her child at school.  By failing to inform Child No. 2's mother that her nine year old son was being chained and handcuffed, placed in rooms secluded from others for extended periods of time, and serving in-school suspensions, the school breached their own policies.

35.

Defendant Burnett ordered these seizures and arrests and her actions caused Child No. 2 harm and subjected him to punishment, humiliation and intimidation.  Child No. 2 was deeply traumatized as a result of being arrested and seized on multiple occasions.

36.

At no time before or during the arrests and/or seizures did the Defendants attempt to secure Child No. 2's compliance with school rules by using more reasonable and less intrusive tactics.   Once Ms. McCall learned about the use of restraints, chains, and handcuff, she confronted Defendant Burnett, whom she saw multiple times a week at the school.   At that time, Defendant Burnett told Ms. McCall that it was school policy for school officials to arrest, seize, and use restraints on disobedient elementary school children that break non-criminal school rules, regardless of whether they are physically, emotionally, or developmentally impaired.

37.

As a direct and proximate result of the actions of Defendants, Child No. 2 suffered physical injury, including bruises, pain and extreme discomfort.   The Defendants' actions also caused Child No. 2 humiliation and extreme mental anguish and continues to live in in fear that he will be subjected to these unlawful practices repeatedly in the future.

38.

Arresting, seizing, handcuffing and shackling a disabled nine year child to a chair is an aberrant law enforcement and behavioral management practice.   An objectively reasonable school principal and school teacher know that it is unlawful to seize and arrest a child for allegedly violating a minor school rule by handcuffing and shackling the child to a chair. Similarly, an objectively reasonable school principal and school teacher know that it is unlawful to subject students to arrests and seizures solely for the purpose of punishment, humiliation and intimidation.

39.

Under Louisiana law, ten-year old children cannot be arrested or held liable for violations of the criminal code.  La. R.S. §14:13.  Thus, it is clear that the Defendants lacked reasonable suspicion or probable cause to believe that Child No. 2 committed a criminal act.  As a result, the Defendants' actions constitute an unlawful arrest under Louisiana law and the Fourth Amendment to the U.S. Constitution.

40.

When the Defendants detained Child No. 2, they subjected him to an unreasonable and excessively intrusive seizure that was calculated solely to punish, humiliate and intimidate.  As a result, the Defendants' actions constitute an excessively intrusive seizure in violation of the Fourth Amendment of the U.S. Constitution and deprivation of Child No. 2's constitutional rights.

41.

The RSD School Police Operations manual is merely a re-tread of the New Orleans Police Department manual.  The manual fails to include information school police officers need to lawfully execute their duties, including information about how to de-escalate situations involving young children and how to avoid using force and restraint against youth who are not suspected of committing a criminal offense.  The manual blurs the legal distinctions between law enforcement and school security and conflicts with the RSD Code of Conduct which states that school police officers are responsible for "assisting and creating a safe and conducive learning environment in our schools and working in conjunction with Positive Behavior Supports and Interventions."

42.

RSD school police officers receive wholly inadequate training that covers only the appropriate use of firearms and batons. RSD school police officers do not receive training about the use of handcuffs and shackles or about developmentally appropriate responses to elementary school children who fail to follow school rules.

43.

The BESE Board is responsible for the oversight of the RSD and the approval and adoption of rules, by-laws, and regulations for the discipline of students. With deliberate indifference to the rights of the students at Reed Elementary School, the BESE Board has failed and continues to fail to ensure that the school's policies and practices comply with federal and state law. As a result, Child No. 2 was subjected to unreasonable and excessively intrusive seizures and arrests for violations of minor school rules that do not constitute reasonable suspicion or probable cause of criminal activity.

44.

The BESE Board has failed to promulgate policies and practices related to training and operations to protect the rights of Reed Elementary School students against unreasonable arrests and excessively intrusive seizures. The BESE Board has approved policies that provide wholly inadequate guidance to school police regarding how to lawfully execute arrests and seizures. The BESE Board has also authorized wholly inadequate training for school police officers that fails to provide those officers with the knowledge or skills needed to comply with federal law. As a direct and proximate cause of BESE's actions, Child No. 2 is subject to an ongoing policy of unreasonable and excessively intrusive arrests and seizures.

45.

BESE has failed to take any action to ensure that the Defendants comply with federal and state law despite knowledge that the Defendants enforce a school-wide policy that mandates the unreasonable and excessively intrusive arrests and seizures of students who are alleged to violate minor school rules. As a direct and proximate cause of BESE's actions, Child No. 2 is subject to an ongoing policy of unreasonable and excessively intrusive arrests and seizures.

46.

Defendant Vallas is responsible for implementing the policies, programs, and laws affecting RSD-operated public schools. With deliberate indifference to the rights of the students at Reed Elementary School, Defendant Vallas has failed to ensure that the school's policies and practices comply with federal and state law. As a result, students are subject to unreasonable and excessively intrusive seizures and arrests for violations of minor school rules that do not give rise to reasonable suspicion or probable cause of criminal activity.

47.

Defendant Vallas has failed to promulgate policies and practices related to training and operations to protect the rights of Reed Elementary School students against unreasonable arrests and excessively intrusive seizures. Defendant Vallas has approved policies that provide wholly inadequate guidance to school police regarding how to lawfully execute arrests and seizures. Defendant Vallas has also authorized wholly inadequate training for school police officers that fails to provide those officers with the knowledge or skills needed to comply with federal law. As a direct and proximate cause of Defendant Vallas' actions, Child No. 2 is subject to an ongoing policy of unreasonable and excessively intrusive arrests and seizures.

48.

Despite knowledge that the Defendants have promulgated and enforced a school-wide policy that mandates unreasonable and excessively intrusive arrests and seizures of students who are alleged to violate minor school rules, Defendant Vallas has failed to take action to ensure that the Defendants comply with federal and state law.  As a direct and proximate cause of Defendant Vallas' actions, Child No. 2 is subject to a policy of unreasonable and excessively intrusive arrests and seizures.

49.

Defendant Compass has supervisory authority over all RSD Police Officers.  With deliberate indifference to the rights of the students at Reed Elementary School, Defendant Compass has failed to ensure that the RSD Police Officers are adequately trained and that policy and practice regarding public safety at Reed Elementary School complies with federal and state law.  As a result, students are subject to unreasonable and excessively intrusive seizures and arrests for violations of minor school rules that do not give rise to reasonable suspicion or probable cause of criminal activity.

50.

Defendant Compass has failed to promulgate policies and practices related to training and operations to protect the rights of Reed Elementary School students against unreasonable arrests and excessively intrusive seizures.  Defendant Compass has approved policies that provide wholly inadequate guidance to school police regarding how to lawfully execute arrests and seizures.  Defendant Compass has also authorized wholly inadequate training for school police officers that fails to provide those officers with the knowledge or skills needed to comply with

federal law.  As a direct and proximate cause of Defendant Compass' actions, Child No. 2 is subject to an ongoing policy of unreasonable and excessively intrusive arrests and seizures.

51.

Despite knowledge that the RSD Police Officers enforce a policy of unreasonable and excessively intrusive arrests and seizures of students who are alleged to violate minor school rules, Defendant Compass has failed to take action to ensure that the Defendants comply with federal and state law.  As a direct and proximate cause of Defendant Compass' actions, Child No. 2 is subject to a policy of unreasonable and excessively intrusive arrests and seizures.

52.

By their failure to comply with state and federal law, the Defendants continue to subject Reed Elementary School students to an unacceptable risk of constitutional violations which manifest in egregious abuses like those suffered by Child No. 2.

53.

By their foregoing actions and inactions, Defendants Vallas, Compass, the BESE Board, Burnett, and Johnson are liable pursuant to 42 U.S.C. §1983 for sanctioning and enforcing Reed Elementary School's policy of subjecting school children to unlawful arrests and seizures for minor violations of school rules absent reasonable suspicion or probable cause of criminal activity in violation of the Fourth and Fourteenth Amendments of the U.S. Constitution.

54.

By their foregoing actions and inactions, Defendants Vallas, Compass, the BESE Board, Burnett, and Johnson are liable pursuant to 42 U.S.C. §1983 for sanctioning and enforcing Reed Elementary School's policy of subjecting students to excessively intrusive seizures consisting of handcuffing, shackling and chaining school children, including Child No. 2, to furniture for

minor violations of school rules absent reasonable suspicion or probable cause of criminal activity in violation of the Fourth and Fourteenth Amendments of the U.S. Constitution.

55.

By their foregoing actions and inactions, Defendants, Vallas, Compass, the BESE Board, Burnett, and Johnson are liable pursuant to 42 U.S.C. §1983 for sanctioning and enforcing a policy of subjecting students to unreasonable and excessively intrusive seizures consisting of handcuffing, shackling and chaining school children, including Child No. 2, to furniture for minor violations of school rules absent reasonable suspicion or probable cause of criminal activity in violation of the Fourth and Fourteenth Amendments of the U.S. Constitution.  The actions of these Defendants showed a callous disregard for the rights of Child No. 2.

56.

Child No. 2 seeks a declaratory judgment, compensatory and punitive damages against Defendants, Vallas, Compass, the BESE Board, Burnett, and Johnson.

57.

By her foregoing actions and inactions, Defendants, Vallas, Compass, the BESE Board, Burnett, and Johnson are liable pursuant to 42 U.S.C. § 1983 for subjecting Child No. 2 to harassment and retaliation for asserting his right to be free from unlawful and unreasonably intrusive arrests and seizures in violation of the First, Fourth and Fourteenth Amendments of the U.S. Constitution.

58.

By their foregoing actions, Defendants, Vallas, Compass, the BESE Board, Burnett, and Johnson are liable for the assault and battery of Child No. 2 in violation of Louisiana law.  La. R.S. §14:36; La. R.S. §14:33.

59.

By their foregoing actions, Defendants, Vallas, Compass, the BESE Board, Burnett, and Johnson are liable for the intentional infliction of emotional distress against Child No. 2 in violation of Louisiana law.

60.

By their foregoing actions, Defendants, Vallas, Compass, the BESE Board, Burnett, and Johnson are liable for the false imprisonment of Child No. 2 in violation of Louisiana law.  La. R.S. §14:46.

61.

As a result of Defendants' above-described fault and negligence, Plaintiff, Child No. 2, through his mother, Danielle McCall, brings an action for damages that includes, but is not limited to: pain and suffering, past, present and future; mental suffering, past, present and future; permanent disability; past, present and future; medical expenses, past, present and future; and loss of enjoyment of life.

WHEREFORE, Plaintiff, Danielle McCall on behalf of her minor children, S. R. E. and S. R. E., respectfully prays that her Amended Complaint be deemed good and sufficient, and that Defendants, Paul Vallas, Superintendent of the Recovery School District in his official capacity, Louisiana Board of Elementary and Secondary Education, in its official capacity, Edwin Compass, Director of Recovery School District Safety and Security in his official capacity, Cheryl Johnson, Teacher at Sarah. T. Reed Elementary School in her individual and official capacities, and Daphyne Burnett, Principal of Sarah T. Reed Elementary School in her individual and official capacities, be duly served with a copy of this Amended Complaint, and that they be made to appear and answer same within the delays allowed by law, and that after all due and

legal proceedings are had herein, for the reasons set forth herein, that there be judgment entered in favor of Plaintiff, Danielle McCall, Individually and on behalf of her minor children S. R. E. and S. R. E. and against the Defendants, jointly, severally, and *in solido*, for all requested relief and general and exemplary damages in an amount that is reasonable under the premises, and together with all costs of these proceedings and attorney's fees pursuant to 42 U.S.C. § 1988, for legal interest from the date of judicial demand until paid, and for all general and equitable relief.

Respectfully submitted,


*/s/ Joseph S. Piacun*
THOMAS A. GENNUSA, II, (6010)
JOSEPH S. PIACUN  (25211)
REID S. UZEE (31345)
Gennusa, Piacun & Ruli
4405 North I-10 Service Road, Suite 200
Metairie, Louisiana 70006-6564
Telephone: (504) 455-0442
Facsimile: (504) 455-7565
**Attorneys for Plaintiffs**


Certificate of Service

I certify that on January 3, 2012, I served a copy of this *Amended Complaint* on all counsel of record through the Court's CM/ECF electronic filing system.


*/s/ Joseph S. Piacun*